1   DANIEL S. IMBER, (SBN 185425)
    E-mail: dimber@imberlawgroup.com
2   IMBER LAW GROUP, APC
    9454 Wilshire Boulevard, Penthouse
3   Beverly Hills, CA 90212
    Tel: 310.248.4884    Fax: 866.243.8084
4

5   Attorneys for Plaintiff
    The Lincoln National Life
6   Insurance Company

FILED

2012 JUN 29  PM 3: 08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  THE LINCOLN NATIONAL LIFE          Case No. **CV12-5677** RGK
    INSURANCE COMPANY,                                        (CWx)
12                                     **COMPLAINT FOR:**
              Plaintiff,
13                                     1. Breach of Contract
    v.                                 2. Conspiracy to Defraud
14                                     3. Unjust Enrichment
    DREAM FINANCIAL &                  4. Imposition of Constructive Trust
15  INSURANCE SERVICES, INC.,          5. Negligence
    MOHAMMED KAKOOZA,                  6. Unfair Business Practice
16  MARGRET BIRABWA, JOSEPHINE            (B&P Code § 17200, et seq.)
    KISAKYE, RAM BUKENYA,
17  STEPHEN MUNGOMA, JOSE
    MELCHOR, EVELYN
18  NAMUJULIRWA, MARIE
    BAKAMPA KALUNGI, RONALD
19  LUKWAGO,

20            Defendants.

21

22

23

24        Plaintiff The Lincoln National Life Insurance Company ("Lincoln") complains

25  of the above-named defendants as follows:

26  ///

27  ///

28  ///

                                    - 1 -
                                                              COMPLAINT

**PARTIES**

1.  Lincoln is a corporation organized and existing under the laws of the state of Indiana, authorized to transact and transacting business in the State of California. Lincoln's principal place of business, comprised of both the substantial predominance of corporate operations and where the majority of executive and administrative functions are performed, is in Fort Wayne, Indiana.

2.  Lincoln is informed and believes, and thereon alleges, that defendant Dream Financial & Insurance Services, Inc. ("Dream Financial") is a corporation organized and existing under the laws of the State of California, with its principal place of business, comprised of both the substantial predominance of corporate operations and where the majority of executive and administrative functions are performed, is in Mission Hills, California. Lincoln further is informed and believes, and thereon alleges, that Dream Financial does and has done business in the County of Los Angeles, State of California, within the Central District of California.

3.  Lincoln is informed and believes, and thereon alleges, that defendant Mohammed Kakooza ("Kakooza") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

4.  Lincoln is informed and believes, and thereon alleges, that defendant Margret Birabwa ("Birabwa") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

5.  Lincoln is informed and believes, and thereon alleges, that defendant Josephine Kisakye ("Kisakye") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

///

COMPLAINT

6. Lincoln is informed and believes, and thereon alleges, that defendant Ram Bukenya ("Bukenya") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

7. Lincoln is informed and believes, and thereon alleges, that defendant Stephen Mungoma ("Mungoma") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

8. Lincoln is informed and believes, and thereon alleges, that defendant Jose Melchor ("Melchor") is an individual who does and has done business in, the County of Los Angeles, State of California, within the Central District of California. Lincoln further is informed and believes, and thereon alleges, that Melchor is a citizen of the State of California and resident of the Central District of California in the County of San Bernardino.

9. Lincoln is informed and believes, and thereon alleges, that defendant Evelyn Namujulirwa ("Namujulirwa") is an individual who is a citizen and resident, and does and has done business in, the County of Los Angeles, State of California, within the Central District of California.

10. Lincoln is informed and believes, and thereon alleges, that defendant Marie Bakampa Kalungi ("Kalungi") is an individual has done business in, the County of Los Angeles, State of California, within the Central District of California. Lincoln further is informed and believes, and thereon alleges, that Kalungi is a citizen of the State of Nevada.

11. Lincoln is informed and believes, and thereon alleges, that defendant Ronald Lukwago ("Lukwago") is an individual who has done business in, the County of Los Angeles, State of California, within the Central District of California. Lincoln further is informed and believes, and thereon alleges, that Lukwago is a citizen of the State of Wisconsin.

COMPLAINT

1

## JURISDICTION AND VENUE

2      12.  The United States District Court for the Central District of California has

3  subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332.  The amount

4  in controversy exceeds seventy-five thousand dollars ($75,000.00) and there is the

5  requisite complete diversity of citizenship between Lincoln and Defendants.

6      13.  Venue is proper in the Central District of California pursuant to 28 U.S.C. §

7  1391(a) in that a substantial part of the events giving rise to the Complaint occurred

8  in this district.  Furthermore, Lincoln is informed and believes, and thereon alleges,

9  that the majority of the contracts upon which this action is based were entered into

10  in this district and the majority of the Defendants reside in this district.

11

## GENERAL ALLEGATIONS

12      14.  At all times relevant hereto, defendants Dream Financial, Kakooza,

13  Birabwa, Kisakye, Bukenya, Mungoma, Melchor, and Namujulirwa were insurance

14  agents and/or brokers licensed by the State of California and authorized to sell

15  insurance for various insurance companies.  At all relevant times hereto, defendant

16  Kalungi was an insurance agent and/or broker licensed by the State of Nevada and

17  authorized to sell insurance for various insurance companies.  At all relevant times

18  hereto, defendant Lukwago was an insurance agent and/or broker licensed by the

19  State of Wisconsin and authorized to sell insurance for various insurance

20  companies.  At all relevant times hereto, Dream Financial, Kakooza, Birabwa,

21  Kisakye, Bukenya, Mungoma, Melchor, Namujulirwa, Kalungi, and Lukwago

22  (collectively the "Defendant Agents") were authorized to sell insurance for plaintiff

23  Lincoln.

24      15.  Each of the Defendant Agents entered into contracts with Lincoln which

25  authorized them to solicit applications for Lincoln pursuant to the terms and

26  conditions of their contracts.  The Defendant Agents were contracted with Lincoln

27  in 2009 and/or 2010.  True and correct copies of Lincoln's contracts with the

28  Defendant Agents are attached hereto as Exhibits 1 through 9 respectively.

COMPLAINT

16.  During 2009 and/or 2010, the Defendant Agents submitted applications for life insurance to Lincoln.  In response to those applications and the initial premiums paid, Lincoln underwrote and issued life insurance policies.  After the policies were issued and delivered to the insureds, Lincoln paid annualized commissions to the Defendant Agents.  Pursuant to its contracts with them, the amount of those commissions exceeded the amounts which Lincoln received and were to receive in first year premiums for the policies.

17.  Part of Defendant Agents' business was to seek insureds for life insurance policies.  Because the many of the applicants presented by the Defendant Agents requested life insurance policies with a high face amount of insurance, extensive underwriting was required.  Lincoln incurred substantial costs for this underwriting. The insurer, insured and agent generally all expect the policies to stay in force for more than one year.  The commissions paid to agents and Lincoln's costs for administering its policies are significantly less for years subsequent to the first year that a policy is in place.

18.  Lincoln reasonably believed that Defendant Agents marketed Lincoln's insurance products to prospective insureds who purchased the insurance with their own funds.  However, Lincoln is informed and believes, and thereon alleges, that Defendant Agents operated a premium finance and rebating scheme in violation of their contracts.  Lincoln prohibits premiums being paid directly or indirectly from agent funds and the rebating of commissions.

19.  Lincoln is informed and believes, and thereon alleges, that Defendant Agents took advantage of annualized commissions based on the initial premiums paid via monthly bank draft.  After the policies were issued, and after the annualized commission was paid, Defendant Agents would contact Lincoln and ask that the policies be moved to quarterly direct billing.  A series of money orders were submitted to pay one or two quarterly premiums, but then payments ceased and the policies were left to lapse.

COMPLAINT

20.  If Lincoln had known that the Defendant Agents had promised the insureds free insurance, were rebating portions of their commissions to pay the premiums which were paid, or that the source of the premiums was not from the insureds, Lincoln would not have issued the policies and paid the commissions to the Defendant Agents.  Because the truth about the nature of the relationships and the circumstances of the premium payments was withheld from Lincoln, it incurred the costs of underwriting, paid commissions, and incurred other damages to be shown at trial.

## FIRST CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT

(Against All Defendants)

21.  Lincoln incorporates the foregoing paragraphs 1 through 20 as though fully set forth herein.

22.  The contracts between Lincoln and the Defendant Agents include the following provisions in pertinent part:

"4.     **Limitation of Authority.**  …The Producer shall not:

g.  pay any premiums on the Policies other than the Producer's own or the Producer's immediate family members

7.     **Compliance.**  The Producer agrees to comply with all applicable local, state and federal laws and with all rules and regulations of the regulatory agencies having jurisdiction with respect to the sales of the Policies.  The Producer agrees to abide by the terms and conditions of this Agreement, The Producer's Compensation Plan, the Market Conduct Manual, and any rules relating to the Company's business as may be published, or contained on the Company's Web site, from time to time.

18.     **Compensation.**

(d) Restrictions.

COMPLAINT

1    (i)  The Producer agrees that Producer shall not, whether or not

2    permitted by law:  (1) rebate or offer to rebate all or any part of a premium

3    on a Policy, directly or indirectly; . . . (3) rebate or offer to rebate all or any

4    part of a commission paid or payable upon the sale of a Policy; or (4)

5    promote fee splitting or commission sharing arrangements.

6    21.   **Indebtedness.**

7    (a)  Lincoln is authorized, at any time either before or after the

8    termination of the Agreement, to deduct compensation due from Lincoln to

9    the Producer, whether payable hereunder or with respect to policies which

10   are both administered and co-insured by Company, the entire amount of any

11   funds, including, but not limited to, advances or debts, owed by the Producer

12   to Lincoln or its affiliates, associates, parents or subsidiaries, but only to the

13   extent of the actual amount owed by the Producer as determined by Lincoln.

14   (b)  Any compensation, regardless of how characterized, paid to the

15   Producer for premiums or considerations, including rollover amounts, later

16   returned or credited to the customer, or any overpayment of such

17   compensation shall be a debt due to Lincoln from the Producer and payable

18   in accordance with (a) above.

19   (c)  In addition to all other rights available to Lincoln as a creditor,

20   Lincoln shall have a first lien on all compensation payable under the

21   Agreement for any of the funds, advances or debts described herein.

22   (d)  To the extent that any compensation due the Producer from

23   Lincoln is insufficient to cover advances or other debts, the difference shall

24   become a debt due and payable immediately to Lincoln unless other

25   arrangements have been made with Lincoln.  At the sole discretion of

26   Lincoln, interest, at a lawful rate to be determined by Lincoln, shall

27   thereupon begin to accrue.

28   (e)  In the event Company initiates collection efforts or legal action to

COMPLAINT

1   collect any indebtedness of Producer or its agents, Producer shall reimburse
2   Company for reasonable attorney fees and expenses in connection therewith.
3   As used in this Section, "Company" shall be deemed to refer to, and shall
4   include, all affiliates of The Lincoln National Life Insurance Company.

5   23.   Lincoln has fulfilled all the terms and conditions of the contracts on its part
6   to be performed.

7   24.   By engaging in the conduct described herein, Defendant Agents have
8   breached the terms of their respective contracts with Lincoln.  As a result of that
9   breach, Lincoln has been damaged in an amount to be shown at trial.

10   25.   Additionally, due to the advances of expenses and commissions paid by
11   Lincoln to Defendant Agents on the lapsed policies, Defendant Agents are indebted
12   to Lincoln in the following amounts or approximately the following amounts, the
13   nonpayment of which further has resulted in the Defendant Agents' breach of their
14   contracts:

15   Dream Financial/Kakooza        $331,718.93
16   Birabwa                        $126,878.69
17   Kisakye                        $54,255.31
18   Bukenya                        $106,187.47
19   Mungoma                        $817.02
20   Melchor                        $1,237.00
21   Namujulirwa                    $15,847.18
22   Kalungi                        $7,045.78
23   Lukwago                        $1,163.45

24   26.   Lincoln has made demand upon Defendant Agents for repayment of these
25   sums, but Defendant Agents have failed and refused to pay all or any part of their
26   indebtedness to Lincoln.  As a result, Lincoln has been damaged in an amount to be
27   determined according to proof at the time of trial, but not less than the listed
28   amounts plus interest and attorneys' fees.

**SECOND CLAIM FOR RELIEF**

**FOR CONSPIRACY TO DEFRAUD**

(Against All Defendants)

27.  Lincoln incorporates the foregoing paragraphs 1 through 20 and 22 through 26 as though fully set forth herein.

28.  Lincoln is informed and believes, and thereon alleges, that in 2009 and 2010, Defendant Agents entered into a common plan, agreement and understanding among themselves to defraud Lincoln into issuing insurance policies that it would not have issued had it been aware of the true facts and thereby to exploit to Lincoln's detriment the fact that it was contractually obligated to pay the Defendant Agents an annualized first year commission on a policy of life insurance that exceeded the initial premium that it received on that policy.  Defendant Agents knew, among other things, that Lincoln would not issue an insurance policy unless there was a reasonable probability that the insured would not allow the policy to lapse in the first year and would renew coverage in the second year and beyond, and that Lincoln would not issue an insurance policy if it knew that the premium was being paid by a person or entity other than the insured.  According, to deceive Lincoln into issuing insurance and paying the required first year annualized commission, Defendants agreed among themselves essentially to have the Defendant Agents apply for insurance, tendering as the premium money provided by parties other than the insureds, but in such a manner as to disguise its source from Lincoln.  Defendant Agents further agreed among themselves to have the policy premiums converted from monthly payment billing to quarterly billing in order to deceive Lincoln by lengthening the time between the payment of the annualized commissions and lapse of the policies.

///

///

///

COMPLAINT

1   29.  Lincoln was without knowledge of Defendant Agents' agreement and

2   reasonably believed that its requirements were met.  Due to Defendant Agents'

3   conspiracy, Lincoln has been damaged as set forth herein and according to proof at

4   trial.

5                          **THIRD CLAIM FOR RELIEF**

6                          **FOR UNJUST ENRICHMENT**

7                              (Against All Defendants)

8   30.  Lincoln incorporates the foregoing paragraphs 1 through 20, 22 through 26,

9   and 28 through 29 as though fully set forth herein.

10   31.  Pursuant to the terms of their contracts with Lincoln, Defendant Agents

11   were not entitled to retain overpayment of commissions resulting from the policy

12   lapses as described herein.  As a result of Defendant Agents' actions, the Defendant

13   Agents were paid annualized commissions on at least 95 policies which lapsed and

14   created indebtedness according to the Defendant Agents' contracts.

15   32.  Defendant Agents have retained commissions as listed below, even though

16   the policies lapsed creating an indebtedness, and Lincoln demanded repayment of

17   the commissions from Defendant Agents.  The amounts owed by Defendant Agents

18   to Lincoln are as follows:

19          Dream Financial/Kakooza          $331,718.93

20          Birabwa                          $126,878.69

21          Kisakye                          $54,255.31

22          Bukenya                          $106,187.47

23          Mungoma                          $817.02

24          Melchor                          $1,237.00

25          Namujulirwa                      $15,847.18

26          Kalungi                          $7,045.78

27          Lukwago                          $1,163.45

28   ///

COMPLAINT

33.  Despite demands by Lincoln to repay the money, Defendant Agents have refused to do so and have not done so.

34.  By reason of the facts alleged herein, Defendant Agents have been unjustly enriched in the sums listed in paragraph 31 above.  Lincoln is entitled to restitution from Defendant Agents in that amount.

35.  As a result of Defendant Agents' actions, Lincoln has been damaged in an amount to be determined according to proof at the time of trial, but not less than the amounts listed in paragraph 32 above, plus interest and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**FOR IMPOSTION OF CONSTRUCTIVE TRUST**

(Against All Defendants)

36.  Lincoln incorporates the foregoing paragraphs 1 through 20, 22 through 26, and 28 through 29, 31 through 35 as though fully set forth herein.

37.  Under the terms of the contracts between Defendant Agents and Lincoln, Defendant Agents must repay to Lincoln commissions they received for at least 95 lapsed policies for which Defendant Agents received annualized commissions.  To date, Defendant Agents have retained said commissions, even though there is not basis upon which to do so.  Despite demands by Lincoln to repay the money, Defendant Agents have refused to do so and have not done so.  Instead, Defendant Agents retained the commissions, and converted the same to their own use, in spite of their obligations to repay the commissions to Lincoln.

38. Lincoln is informed and believes, and thereon alleges, that Defendant Agents are in possession of the commissions and/or real and/or personal property, the acquisition of, and profits from, which can be traced to the commissions paid.  The retention of such monies and/or traceable real and/or personal property and/or profits by Defendant Agents to their unjust enrichment.

///

///

COMPLAINT

39.  Defendant Agents hold the below sums and/or traceable real and/or personal property and/or profits as constructive trustee for Lincoln's benefit:

| | |
|---|---|
| Dream Financial/Kakooza | $331,718.93 |
| Birabwa | $126,878.69 |
| Kisakye | $54,255.31 |
| Bukenya | $106,187.47 |
| Mungoma | $817.02 |
| Melchor | $1,237.00 |
| Namujulirwa | $15,847.18 |
| Kalungi | $7,045.78 |
| Lukwago | $1,163.45 |

## FIFTH CLAIM FOR RELIEF
## FOR NEGLIGENCE
### (Against All Defendants)

40.  Lincoln incorporates the foregoing paragraphs 1 through 20, 22 through 26, and 28 through 29, 31 through 35 and 37 through 39 as though fully set forth herein.

41.  In soliciting insurance and taking and submitting applications to Lincoln, Defendant Agents had a duty to Lincoln to make accurate representations and not to withhold or conceal material information regarding the financing of premiums and/or rebating of commissions, with respect to the information submitted in and in connection with the applications, and in their handling of premium funds.

42.  Defendant Agents negligently breached their duty to provide full and accurate information to Lincoln as set forth herein.  Defendant Agents further breached their duty to Lincoln by converting premium payment billing from monthly to quarterly, thereby extending the period between payment of annualized commissions and the lapse of the policies to Defendant Agents' benefit.

COMPLAINT

1    43.  Lincoln has been damaged as a result of Defendant Agents' negligence as

2  set forth herein, including, but not limited to, the costs of underwriting policies

3  which were not paid for personally by the insureds and commissions paid to the

4  agents to which they were not entitled by reason of their failure to comply with

5  their contracts with Lincoln and in additional amounts to be shown at the time of

6  trial.

7                                **SIXTH CLAIM FOR RELIEF**

8                          **FOR UNFAIR BUSINESS PRACTICE**

9                                 (Against All Defendants)

10    44.  Lincoln incorporates the foregoing paragraphs 1 through 20, 22 through 26,

11  and 28 through 29, 31 through 35, 37 through 39, and 41 through 43 as though fully

12  set forth herein.

13    45.  Lincoln is informed and believes, and thereon alleges, that Defendant

14  Agents have engaged in unfair business practices by premium financing and

15  rebating commissions, the taking and submission of insurance applications

16  Defendant Agents knew would lapse in the first year and never be renewed, and

17  Defendant Agents' failure to reveal to Lincoln the true facts about their business

18  arrangement and the rebating of commissions.

19    46.  Defendants' conduct constitutes an unlawful and unfair business practice

20  prohibited by California Business & Professions Code section 17200 et seq.

21  Accordingly, Lincoln seeks injunctive relief preventing Defendant Agents

22  deceptive practices as alleged herein, which conduct is likely to deceive the public,

23  specifically applicants and potential applicants for life insurance products and the

24  purchasers of such products.  Lincoln also seeks an Order requiring Defendant

25  Agents to disgorge their ill-gotten profits gained through the unlawful, unfair and

26  deceptive conduct described herein.

27  ///

28  ///

**PRAYER FOR DAMAGES**

WHEREFORE, Lincoln prays for judgment as follows:

1.      For Defendant Agents' indebtedness plus interest as follows:

| | |
|---|---|
| Dream Financial/Kakooza | $331,718.93 |
| Birabwa | $126,878.69 |
| Kisakye | $54,255.31 |
| Bukenya | $106,187.47 |
| Mungoma | $817.02 |
| Melchor | $1,237.00 |
| Namujulirwa | $15,847.18 |
| Kalungi | $7,045.78 |
| Lukwago | $1,163.45; |

2.      For judgment against Defendant Agents for general and special damages;

3.      For costs and expenses and general damages incurred due to the underwriting and issuance of the subject policies;

4.      For injunctive relief;

5.      For punitive damages;

6.      For reasonable attorney's fees;

7.      For costs of suit incurred herein;

///

///

///

///

///

///

///

///

COMPLAINT

8.    For an order declaring that Defendant Agents hold the commissions paid to them, in the sums listed above, and/or any real and/or personal property and/or profits that can be traced to the commissions in trust for Lincoln and compelling Defendant Agents to convey such proceeds and/or any real and/or personal property and/or profits therefrom to Lincoln; and

9.    For such other and further relief as the Court deems just and proper.


Dated:    June 28, 2012               DANIEL S. IMBER
                                      IMBER LAW GROUP, APC


                                      By: _____
                                          Daniel S. Imber
                                          Attorneys for Plaintiff
                                          The Lincoln National Life Insurance
                                          Company

COMPLAINT